IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN JOHNSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 16-5188 |
| CHRISTOPHER THOMAS, et al., | : | |
| Defendants. | : | |

MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 **FEBRUARY 1, 2017**

Presently before the Court is Defendants, Christopher Thomas ("Thomas") and City of Philadelphia's ("City") (collectively "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff, Steven Johnson's ("Plaintiff") Response in Opposition thereto, and Defendants' Reply. For the reasons set forth below, Defendants' Motion is denied.

**I.     BACKGROUND**

This case revolves around an incident where a prisoner was erroneously discharged 124 days past the maximum term allowed by his sentence. On September 29, 2016, Plaintiff initiated suit by filing a Complaint against Defendants. (Doc. No. 1.) Defendants moved to dismiss and, Plaintiff, subsequently, filed an Amended Complaint on October 28, 2016. (Doc. No. 5.) Defendants now move to dismiss Plaintiff's Amended Complaint. (Doc. No. 6.)

The underlying facts of the case begin on April 26, 2011, when Plaintiff was sentenced in the Philadelphia Court of Common Pleas to three to six years in state prison. (Am. Compl. ¶ 6.) If Plaintiff served the maximum term allowed under his sentence, he was to be released on April 10, 2016; however, he was not actually released from custody until August 12, 2016. (Id. ¶ 16.)

The reason for the late release had to do with Defendants not properly awarding Plaintiff time credit for the time he spent in custody.  (Id. ¶ 7.)  Allegedly, Plaintiff realized the error and notified Thomas and John Doe ("Doe"), the Pennsylvania Department of Corrections, and the Pennsylvania Board of Probation and Parole.  (Id. ¶¶ 8-9.)  In addition, Plaintiff filed a pro se motion on July 12, 2015, in the Court of Common Pleas of Philadelphia to correct his time credit issue, but he was not given a hearing.  (Id. ¶ 10.)  Eventually, Thomas and Doe recalculated Plaintiff's time credit and realized the error.  (Id. ¶ 12.)  Once Thomas and Doe alerted the Pennsylvania Department of Corrections and/or the Pennsylvania Board of Probation of this error, Plaintiff was immediately released from custody.  (Id. ¶¶ 13-14.)

Plaintiff's Amended Complaint is comprised of five counts.  Plaintiff alleges in Count I that all Defendants deprived him of his procedural due process rights by failing to properly execute the sentencing court's judgment.  (Id. ¶¶ 24-32.)  In Count II, Plaintiff alleges that Thomas and Doe violated his substantive due process rights by erroneously calculating his sentence in the course of executing the sentencing court's judgment.  (Id. ¶¶ 33-38.)  Count III contends that Thomas and Doe violated his Fourth and Fourteenth amendments by wrongly executing his sentence and holding him without basis past the expiration of his sentence.  (Id. ¶¶ 39-45.)  Count IV alleges that the City was responsible for the aforementioned claims based on municipal liability.  (Id. ¶¶ 46-53.)   Finally, in Count V, Plaintiff contends that Thomas and Doe committed the state law tort of false imprisonment, related to their wrongful execution of the sentencing court's judgment.  (Id. ¶¶ 54-58.)  On November 2, 2016, Defendants filed the Motion to Dismiss that is before us today.  (Doc. 6.)

## II.     STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted.  Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)).  In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff.  Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The United States Supreme Court ("Supreme Court") set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint.  Wilson v. City of Phila., 415 F. Appx. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations.  Iqbal, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Twombly, 550 U.S. at 555.  Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations.  Iqbal, 556 U.S. at 679.  These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8.  See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.

3

2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

## III. DISCUSSION

Defendants argue that Plaintiff's Amended Complaint should be dismissed on its merits for several reasons. Defendants first argue that all of Plaintiff's claims are barred by the decision of the Supreme Court in Heck v. Humphrey, 512 U.S. 477 (1994). (Defs.' Mot. to Dismiss at 4-5.) Second, Defendants argue that if Heck does not bar Plaintiff's claims, the claims should nonetheless be dismissed because they cannot be liable for mere "negligence" under § 1983. (Id. at 4.) Finally, Defendants argued that Count IV should be dismissed because the City cannot be held liable for any claims since the facts alleged in the Amended Complaint do not "plead[] any

actual facts regarding a municipal policy or custom," and also because the allegations do not "allege conduct by a municipal policymaker." (Id. at 5-8.)

### A. Claims are Not Barred By the Decision in Heck

We disagree with Defendants that Plaintiff's claims are barred by the favorable-termination rule articulated in Heck. 512 U.S. 477. In Heck, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 486-87 (footnote omitted). The Supreme Court has explained that, under this favorable-determination rule, a "§ 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of the confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

Plaintiff argues that he is not challenging the duration of his sentence; rather, his claims relate to the procedural deficiencies in the execution of his sentence. (Pl.'s Resp. to Mot. to Dismiss at 2-3.) Our Court has previously held that "Heck does not foreclose a § 1983 claim in which a plaintiff seeks damages for a defendants' use of improper procedures, not for reaching an incorrect result." McBride v. Cahoone, 820 F. Supp. 2d 623, 632 (E.D. Pa. 2011) (citing Spencer v. Kemna, 523 U.S. 1, 17 (1998)); see also Leamer v. Fauver, 288 F.3d 532, 542 (3d

Cir. 2002) (holding that "when the challenge is to a condition of confinement . . . action under § 1983 is appropriate."

In McBride, the Court ruled that the plaintiff's claims were not barred by the favorable-termination rule of Heck. 820 F. Supp. 2d at 633. The plaintiff claimed that he was entitled to some sort of hearing before the defendants refused to let him serve his sentence on electronically monitored home confinement. Id. at 632-33. The Court found that the plaintiff was only challenging the procedure by which he was sent to prison and not the fact or duration of his sentence, so a favorable result in his favor would not "necessarily imply" that his conviction was unlawful. Id. at 633.

Here, we are persuaded by the Court's reasoning in McBride. We agree with Plaintiff that he is only challenging the procedural deficiencies, so a ruling in his favor would not imply the invalidity of the duration of his sentence. Plaintiff does not contest the fact that he was sentenced to three to six years of state custody. Essentially, he claims that he had a maximum release date of April 10, 2016, but due to deficiencies in Defendants' procedures, he was not released until August 12, 2016. This is akin to the procedural arguments in McBride, as Plaintiff is claiming that improper procedures were in place such as: he should have been given notice of his release date; he had an inadequate opportunity to be heard regarding his release date; and Defendants failed to put in place the proper safeguards and policies to help ensure Plaintiff was released on time. (Am. Compl. ¶¶ 21-23.) None of these accusations call into question the actual validity of his sentence; rather, they call into question Defendants' execution of the sentence. The plaintiff in McBride was challenging the procedures by which he was sent to prison, and Plaintiff, in the case before us today, is challenging the procedures by which he was released from prison. Neither implies the invalidity of the duration of their respective sentences.

The cases that Defendants rely on are distinguishable from the case presently before us. The first case Defendants rely on is <u>Royal v. Durison</u>, 254 F.App'x 163 (3d Cir. 2007). In <u>Royal</u>, the plaintiff filed a § 1983 claim against county officials claiming that the defendants violated his Eighth and Fourteenth Amendment rights by failing to recalculate his sentence and credit him with time served prior to his original sentence. <u>Id.</u> at 164.

The Court in <u>Royal</u> held that all his claims were barred by <u>Heck</u>. <u>Id.</u> at 165-66. The Court reasoned that if it held that the defendants did, in fact, incarcerate the plaintiff beyond the statutory maximum, it "would necessarily be holding that the 'confinement or its duration' was invalid in violation of the favorable termination requirement announced in <u>Heck</u>." <u>Id.</u> at 165.

Although the facts of <u>Royal</u> sound similar to those before us today, there are vital differences. The plaintiff in <u>Royal</u> was lodging an attack on his initial sentence by challenging the calculation of time credit **prior** to his sentencing. <u>Id.</u> at 164 (emphasis added). Thus, the plaintiff was making a substantive attack on his sentence since if his time credit was indeed miscalculated prior to his sentencing, he would have been subject to a shorter sentence than the one imposed. <u>Id.</u> at 165-66. This would have resulted in the validity of the judge's sentence being called into question if the Court was to rule in his favor. <u>Id.</u>

Here, unlike in <u>Royal</u>, Plaintiff agrees that the duration of his sentence was valid, and the sentencing judge did not err in any way. (Pl.'s Resp. to Mot. to Dismiss at 4-5.) He lodges no attack on his initial sentence, in whole or in part. (<u>Id.</u>) Plaintiff is simply contending that an administrative error resulted in a miscalculation of his time credit after his sentencing that lead him to over-serve the valid sentence imposed. (<u>Id.</u>) Thus, if we were to rule in Plaintiff's favor, it would not call into question the validity of his sentence; rather, it would just establish that he was not released at its proper conclusion.

The second case Defendants rely on, Gause v. Haile, 559 F. App'x 196 (3d Cir. 2014), can be distinguished for similar reasons. In Gause, a prisoner filed numerous claims including a § 1983 action alleging that the defendants failed to credit him with the time he was incarcerated between his vacated, initial sentence, and his re-imposed sentence, thus resulting in an unlawfully long period of detention. Id. at 198. The Court concluded that "a ruling that [the plaintiff] was held in excess of the maximum sentence would necessarily imply the invalidity of his 'confinement or its duration,' and would therefore violate Heck." Id. Just like in Royal, the plaintiff in Gause was attacking the substantive imposition of his sentence, i.e., the sentence imposed should have been shorter. Here, Plaintiff makes no such substantive attack on his initial sentence.

A ruling in Plaintiff's favor would not infer the invalidity of his confinement or duration. Plaintiff agrees that the duration of his sentence was correct; therefore, Heck has no application here as Plaintiff is alleging that procedural deficiencies led to an improper execution of his sentence, which resulted in him over-serving his valid sentence. With no such substantive attack on his sentence, Defendants' argument that the claims are barred by Heck is denied. See Wilkinson, 544 U.S. at 83 ("Heck uses the word 'sentence' to refer not to prison procedures, but to substantive determinations as to the length of confinement.") (citations omitted).

### B. Plaintiff's Claims are Not Based in Negligence

We disagree with Defendants that all of Plaintiff's claims should be dismissed because they are not cognizable under § 1983 since they are based in negligence. Defendants are correct in stating that "negligence claims are not encompassed within § 1983." Davidson v. O'Lone, 752 F.2d 817, 826 (3d Cir. 1984). However, Defendants' argument fails because Plaintiff alleges a much higher degree of culpability than mere negligence.

Counts I, II, and III all allege that Defendants acted willfully, intentionally, or recklessly when they violated Plaintiff's rights. (Am. Compl. ¶¶ 30, 34, 43.) With regard to Count IV, Plaintiff alleges that the City "deliberately, knowingly and intentionally failed" to remedy an unlawful policy, custom or practice and was "deliberately indifferent" to the related constitutional violations. (Id. ¶¶ 50-51.) Therefore, nothing in Plaintiff's Compliant is premised on mere negligence, so Defendants' Motion is denied in this respect.

**C.  Plaintiff has Stated a Claim in Count IV**

Defendants contend that Count IV alleging that the City is liable under Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978)[1] should be dismissed for a couple reasons. First, Defendants argue that Plaintiff fails to plead facts regarding a specific municipal policy or custom. (Defs.' Mot. to Dismiss at 6-7.) Second, Defendants argue that the claim should be dismissed for failure to allege conduct by a specific policymaker involved in the formation of a custom or policy. (Id. at 7-8.)

Under § 1983 "a municipality cannot be held liable solely because it employs a tortfeasor - or, in other words, a municipality cannot be held liable . . . on a respondeat superior theory." Monell, 436 U.S. at 691. Rather, liability under § 1983 attaches to a municipality only where the "government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694. Thus, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). The Third Circuit provided further guidance on the "policy or custom" requirement when it held the following:

> A government policy or custom can be established in two ways.
> Policy is made when a 'decisionmaker possess[ing] final authority

---

[1] Monell refers to the seminal Supreme Court case addressing municipality liability. See Monell, 436 U.S. 658.

> to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)

Therefore, the municipality is liable if the plaintiff can establish: (1) the municipality had a policy or custom that deprived him of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403=04 (1997) (citing, inter alia, Monell, 436 U.S. at 690–91, 694).

Additionally, municipality liability under § 1983 may also relate to a city's "failure to train" or supervise its employees. Canton, 489 U.S. at 388. However, the liability occurs in limited circumstances and only exists if two requirements are met. See id. at 388-90. First, this liability arises "only where the failure to train amounts to deliberate indifference[2] to the rights of persons with whom [the city's employees] come into contact." Id. Second, "the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury." Id. at 391.

Here, Defendants allege that Plaintiff's claims are vague and general and fail to state a claim since the averments "amount to a mere recitation of the . . . elements required to bring forth a Monell claim . . . [and] are insufficient to survive a motion to dismiss." See Butler v. City of Phila., No. 11-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013). We disagree.

---

[2] This deliberate indifference is a strict standard. See Bryan Cnty., 520 U.S. at 410. "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Bryan Cnty., 520 U.S. at 407).

Plaintiff has alleged that the City promulgated an official policy that set forth inadequate grievance procedures for the execution of a prisoner's sentence. (Am. Compl. ¶ 52.); see also McTernan, 564 F.3d at 657 ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom.") (internal citations omitted).

Plaintiff has done much more than just recite the elements of a Monell claim. Plaintiff elaborated on the policy by alleging that it provided inadequate notice to prisoners, inadequate opportunities for prisoners to be heard, and inadequate constitutional safeguards. (Am. Compl. ¶ 52.) These are far from blanket assertions that courts have dismissed in the past for being conclusory. See, eg., McTernan, 564 F.3d at 660 (dismissing plaintiff's Monell claim since it simply paraphrased § 1983, as it stated, "[a]ll of the acts of the Defendants and their agents, as alleged herein, were conducted under color and pretense of the statutes, ordinances, regulations, customs, or usages of the City of York"). At this early stage in the case, Plaintiff has alleged that the City promulgated a policy that established an inadequate procedure for executing a prisoner's sentence; therefore, he has sufficiently pleaded a Monell claim.

Plaintiff has also sufficiently alleged municipal liability based on the failure of the City to train or supervise its employees. Plaintiff's Amended Complaint specifically alleges that the City had notice that "Defendants Thomas and Doe had previously made similar errors and would continue to make errors in the future," but failed to put into place a policy that would adequately train its employees to calculate release dates in order to prevent future constitutional violations such as the one alleged by Plaintiff. (Am. Compl. ¶ 52.) Before the benefit of discovery, these allegations of deliberate indifference are sufficient to survive a 12(b)(6) dismissal.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint is denied.

An appropriate Order follows.